United States District Court
Southern District of Texas
**ENTERED**
May 31, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE GUARANTEE COMPANY OF NORTH AMERICA USA, *et al.*, | § § § | |
| *Plaintiffs,* | § | |
| v. | § § | |
| HOUSING AND LAND DEVELOPMENT CORPORATION, *et al.*, | § § § | Case No. 4:23-CV-01456 |
| *Defendants,* | § § | |
| v. | § § | |
| THE CITY OF HOUSTON, TEXAS, | § § | |
| *Third-Party Defendant.* | § | |

## <u>JUDGE PALERMO'S REPORT & RECOMMENDATION</u>

This is a construction bond and surety case.[1] Defendant Housing and Land Development Corporation, Inc. d/b/a IKLO Construction ("IKLO") entered into a construction contract with the City of Houston ("the City"). IKLO also executed an indemnity agreement with sureties The Guarantee Company of North America USA and Atlantic Specialty Insurance Company ("Plaintiffs"). Plaintiffs originally filed suit alleging IKLO and others breached the indemnity agreement. Compl., ECF No. 1. IKLO has since filed its first amended third-party complaint, ECF No. 35, asserting claims against the City for breach of contract. Pending before the Court is

---

[1] The district judge to whom this case is assigned referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. Order, ECF No. 48. A motion to dismiss is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636 (b)(1)(A).

the City's motion to dismiss IKLO's third-party complaint, asserting the claims should be dismissed because IKLO has already assigned those claims to Plaintiffs through its indemnity agreement. Further, the City argues that IKLO cannot assert any non-contract claims against the City because it retains its immunity unless waived by statute. ECF No. 37. After thoroughly considering the briefing,[2] the evidence, and the applicable law, the Court concludes that the City's motion to dismiss should be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

IKLO entered into a construction contract with the City. Plaintiffs are sureties on an indemnity agreement with IKLO and issued bonds related to the City construction project. The City terminated the contract with IKLO for non-performance, triggering a default under the contract. The City demanded that Plaintiffs perform under the bonds. Plaintiffs performed and sued IKLO to recover under the indemnity agreement. In its third party action against the City, IKLO alleges various claims stemming from the termination of the construction contract. The City seeks dismissal of the claims, asserting, *inter alia*, that IKLO lacks standing because it assigned all its claims to the sureties under the indemnity agreement.

---

[2] IKLO filed a response, ECF No. 44, and the City filed a reply, ECF No. 46, along with additional exhibits in support, ECF No. 47.

### A.      The Underlying Contracts

In May of 2020, IKLO entered into an Indemnity Agreement with Plaintiffs.

ECF No. 1 ¶ 17. The Indemnity Agreement, ECF No. 1-1, contains the following

relevant provisions under the title of "Security to Surety":

> As collateral security to Surety [Plaintiffs] for the agreement of the
> indemnitors to repay all loss and expense to Surety, whether heretofore
> or hereafter incurred, the Indemnitors [IKLO]:
>
> 1. Assign to Surety and grant a security interest to Surety in all rights
> of the Indemnitors in, or in any manner growing out of:
>
> a. all rights of the Indemnitors in all contracts referred to in the Bonds,
> or secured by the Bonds and all money or property due or to become
> due Indemnitors arising out of or in any way relating to contracts
> performed by Indemnitors, whether secured by Bonds executed by
> Surety or not, including, but not limited to, . . . compensation for extra
> work and claims and the proceeds thereof;
> . . .
> h. all claims, causes of action, actions or demands and proceeds thereof
> which Indemnitors may have against any subcontractor, vendor,
> materialman, owner, architect, engineer, accountant or others, whether
> raising out of contracts secured by Bond(s) executed by Surety or not.
> . . .
> This ASSIGNMENT shall be effective as of the date of this Agreement
> but shall be enforceable only in the event of the occurrence of an Event
> of Default. The Indemnitors hereby authorize the Surety, at its option,
> to prosecute or enforce said assigned rights in the name of the Surety
> or in that of the Indemnitors and to endorse and to collect in the name
> of the Indemnitors or payee any . . . payment of any such assigned
> rights. Surety's exercise of any of its rights as a secured creditor under
> this Agreement shall not be a waiver of any of Surety's legal or
> equitable rights or remedies, including the Surety's rights of
> subrogation.

*Id.* at 3-4. Under the title of "Surety's Remedies in Event of Default," the Indemnity

Agreement further provides that:

3

> Surety, without notice to the Indemnitors, shall have the right, at its sole discretion, to:
>
> . . .
>
> Assert, pursue or prosecute, in its discretion, and at the expense of Indemnitors in the name of Principal or in the name of Surety, all claims of Principal against . . . against any person, subcontractor, supplier, government or governmental agency arising or growing out of contracts or work done thereunder secured by Bonds executed, provided or procured by Surety. The Authority and power to prosecute said claims shall include the authority to settle said claims or any part thereof on such terms as the Surety believes to be in Surety's best interest.

*Id.* at 3. Default under the Indemnity Agreement occurs by "declaration" of any project owner, or by any "breach . . . whether actual or alleged" on "any Contract, or any obligation contained therein." *Id.* at 1.

In February of 2021, IKLO entered into a contract with the City to restore the Houston City Hall basement after Hurricane Harvey ("Restoration Contract"). ECF No. 35 ¶ 9. The general conditions attached to the Restoration Contract make all work subject to the City Engineer's approval. ECF No. 37-2 at 59 (Section 4.1.10). The City Engineer's decisions are considered "final and binding on the Parties" on questions of interpretation or performance of the Restoration Contract submitted to the City Engineer. *Id.* at 59 (Section 4.1.9). Under the dispute resolution provisions, any claims or disputes must be submitted to the City Engineer for resolution. *Id.* at 59-61 (Sections 4.3, 4.4). The City Engineer's final decision on any claim is a condition precedent to suit. *Id.* at 61 (Section 4.5.1).

IKLO began work on the Restoration Contract, and pursuant to the Indemnity

Agreement, Plaintiffs executed a performance bond in case of default. ECF No. 35 ¶ 11. IKLO alleges that the City thereafter interfered with IKLO's ability to perform its obligations on several occasions, eventually resulting in the termination of the Restoration Contract on August 17, 2022. *Id.* ¶¶ 12-14. IKLO further alleges that the City Engineer's decision to terminate was improper and made in bad faith, as some letters provided to IKLO contained "materially false allegations." *Id.* ¶¶ 23-24.

### B.     The Instant Lawsuit

On April 19, 2023, Plaintiffs filed the instant suit, alleging IKLO and other Defendants breached the Indemnity Agreement. *See* ECF No. 1. Attached to the complaint is a copy of the Indemnity Agreement. ECF No. 1-1. IKLO then filed a third-party complaint against the City, asserting breach of the Restoration Contract. ECF No. 18. IKLO contends that the City's allegedly improper termination triggered Plaintiffs' claims against IKLO. *Id.* ¶ 10. The City moved to dismiss, ECF No. 24, and IKLO sought leave to amend, ECF No. 26. The Court granted leave to amend and denied the motion to dismiss as moot. Order, ECF No. 34 at 5. However, the Court did not address the merits of the City's motion, reasoning that it would be premature for the Court to declare that the amendment would be futile. *Id.*

IKLO filed its first amended third-party complaint on January 18, 2024. ECF No. 35. New to the amended complaint are allegations that the Texas State Legislature has waived municipal sovereign immunity for breach-of-contract claims.

*Id.* ¶ 6. IKLO additionally pleads express and implicit waiver. *Id.* ¶¶ 7-8, 10.[3] IKLO then alleges with greater detail the purported "false allegations" the City Engineer relied upon in the decision to terminate the Restoration Contract. *Id.* ¶¶ 23-24. Finally, IKLO raises a new cause of action for breach of the duty to cooperate. *Id.* ¶ 25. The City timely renewed its motion to dismiss. ECF No. 37.

## II.    THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts must construe all well-pleaded "facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'" *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quotation omitted). Legal conclusions, however, are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79. Thus, a pleading must set forth "more than labels

---

[3] Although the third-party complaint refers to the General Conditions of the Restoration Contract, purportedly attached as Exhibit A, *see* ECF No. 35 ¶ 10, there are no attachments on the docket.

and conclusions, and a formulaic recitation of the elements of a cause of action."
*Twombly*, 550 U.S. at 555. A claim has facial plausibility "when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard
for plausibility "is not akin to a 'probability requirement,'" though it does require
more than a "sheer possibility" that a defendant has acted unlawfully. *Id*.

When ruling on a Rule 12(b)(6) motion, a court must exclude all "matters
outside the pleadings," or else convert the motion into one for summary judgment.
FED. R. CIV. P. 12(d). A court may therefore consider the contents of the pleadings,
including attachments thereto, as well as any documents attached to the motion to
dismiss, if they are referenced in the plaintiff's complaint and are central to the
claims. *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021).
Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial
notice of matters of public record." *Polnac v. City of Sulphur Springs*, 555 F. Supp.
3d 309, 322 (E.D. Tex. 2021) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9
(5th Cir. 2007)). In contrast, on a Rule 12(b)(1) motion for dismissal due to lack of
subject-matter jurisdiction, a court may consider: "(1) the complaint alone; (2) the
complaint plus undisputed facts evidenced in the record; or (3) the complaint,
undisputed facts, and the court's resolution of disputed facts." *Davis v. Sharp*, 656
F. Supp. 3d 687, 689 (W.D. Tex. 2023) (citing *Lane v. Halliburton*, 529 F.3d 548,

557 (5th Cir. 2008)).

## III.   THE COURT EXCLUDES OUTSIDE EVIDENCE AT THE MOTION-TO-DISMISS STAGE.

The City brings its motion to dismiss under both Rule 12(b)(1) and 12(b)(6). ECF No. 37 at 1. To the extent the City seeks dismissal for failure to state a claim under Rule 12(b)(6),[4] the Court must first determine whether it may consider the exhibits attached to the briefing. The City attaches to its motion to dismiss a copy of the Restoration Contract under which IKLO purports to sue. ECF No. 37-2. The City further attaches a declaration by the City Engineer, ECF No. 37-1, as well as other related documentation and correspondence between the City and IKLO, including several notices of default and the notice of termination, *see, e.g.*, ECF Nos. 37-3 (June 14, 2022, notice of default), 35-10 (Aug. 1, 2022, notice of default), 37-12 (Aug. 17, 2022, notice of termination). The City also contends that the Court may consider the Indemnity Agreement, which is attached to Plaintiffs' complaint and is central to the claims asserted in this case. ECF No. 37 at 9 n.2. The City does not attempt to explain how the Court may consider the remaining documents.[5]

In response, IKLO objects to all exhibits, other than the Restoration Contract,

---

[4] As explained below, because the Court resolves the motion under Rule 12(b)(6), it is unnecessary to determine whether the exhibits could be considered under Rule 12(b)(1) standards.

[5] In reply, the City belatedly contends that the Court may "consider the complaint supplemented by undisputed facts" on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. ECF No. 46 at 2 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). The City argues that most of its exhibits are referred to in and central to IKLO's third-party complaint. *Id.* at 3. The

as "matters outside the pleading." ECF No. 44 at 4; *cf. Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (explaining that lack of objection is "central to" whether exhibits may be considered). IKLO asserts that these exhibits are irrelevant or inadmissible hearsay. *Id.* (citing FED. R. EVID. 401, 403, 404, 801). But aside from those conclusory assertions, IKLO raises no specific objections and does not detail how each attached exhibit may or may not be considered at this stage. IKLO then attaches several exhibits to its response to be considered "only in the unlikely event that this Court decides to consider the City's external evidence." ECF No. 44 at 4.

Even if the Court accepted IKLO's nonspecific, conclusory objections to the proffered evidence, *but cf. Watts v. L-3 Communications Corp.*, No. 3:12-CV-4248-G, 2013 WL 3789868, at *5 (N.D. Tex. July 22, 2013) (refusing to consider generic objections to summary judgment evidence), IKLO does not object to the Court's consideration of the Restoration Contract, ECF No. 37-2, or the Indemnity Agreement, ECF No. 1-1. Indeed, both documents are referred to in and central to IKLO's third-party complaint. *See* ECF No. 35 ¶ 11. IKLO additionally relies on both documents in support of its arguments in opposition to the motion to dismiss.

---

paragraphs cited in support only reference a handful of documents. *See* ECF No. 35 ¶¶ 14, 22-24 (referencing Restoration Contract, Change Proposal 15A, and two letters dated August 5, 2022, and August 15, 2022). The City then submits additional exhibits in support of its reply briefing. ECF No. 47. However, only those documents attached to the motion to dismiss that are *both* referenced in *and* central to the claims may be considered on a Rule 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The City does not attempt to separately explain how each offered exhibit meets that standard. Regardless, arguments raised for the first time in a reply brief are waived. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

ECF No. 44 at 6; ECF No. 44-1. However, neither party has convincingly explained why the remaining exhibits may be considered. To the extent the City's arguments are premised on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court excludes all other exhibits at this stage.

## IV.    THE CITY'S MOTION TO DISMISS SHOULD BE GRANTED.

In its motion to dismiss, the City argues that IKLO's assignment of its claims to Plaintiffs through the Indemnity Agreement bars suit. ECF No. 37 at 10. The City pursues this argument as an issue of standing and subject-matter jurisdiction, or in the alternative as a lack of capacity to bring suit. *Id.* at 15. The City compares the assignment clause here to similar clauses in three other cases, arguing that the same result—dismissal—should inure. *Id.* at 12-15.

In response, IKLO counters that the City's arguments go to capacity to sue, not constitutional standing. ECF No. 44 at 4-5. IKLO argues that the assignment clause is ambiguous or that Plaintiffs have acquiesced to the third-party complaint. *Id.* at 6-7. However, IKLO cites no relevant legal authority for these arguments, and IKLO fails to address or distinguish the three cases on which the City primarily relies. IKLO's inadequate briefing results in waiver of these arguments, and the Court concludes that IKLO's lack of capacity is fatal.

### A.    *Standing and Capacity Are Both Necessary to a Contract Claim.*

While often confused, the terms "standing" and "capacity" generally refer to

separate concepts. *See Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 163 n.7 (5th Cir. 2016) (noting that "the intermingling of standing and capacity issues is not uncommon" under Texas law).[6] In federal courts, "standing" refers to the limits of Article III "case or controversy" jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To show constitutional standing, the plaintiff bears the burden of establishing three elements: (1) injury in fact, (2) causation, and (3) redressability. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Because standing implicates a federal court's subject-matter jurisdiction, dismissal is required where the plaintiff lacks standing. *See Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024); FED. R. CIV. P. 12(b)(1) (dismissal for lack of subject-matter jurisdiction).

Capacity to sue under a contract—also referred to as "contractual standing"—"speaks to a party's right to relief for breach of contract." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 (5th Cir. 2021) (quotation omitted). Where a party lacks capacity to sue based on "an assignment of contractual rights," that raises questions of capacity or "contractual standing," which "are instead part of the inquiry into the merits of a particular claim." *Id.* at 350. "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal

---

[6] Even legal dictionaries acknowledge that the term "standing" may be used in the informal sense to mean "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Standing*, BLACK'S LAW DICTIONARY (11th ed. 2019); *cf. Capacity*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "capacity" to mean, *inter alia*, "one's ability to sue or be sued . . . See STANDING."). Litigants' frequent confusion of these issues is therefore understandable.

for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."
*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011);
*cf.* FED. R. CIV. P. 12(b)(6) (dismissal for failure to state a claim). "The capacity of
an entity to sue or be sued 'shall be determined by the law of the state in which the
district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.
1991) (quoting FED. R. CIV. P. 17(b)). "Both capacity and standing are necessary to
bring a lawsuit." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020).

The City argues its motion to dismiss primarily in the context of Rule 12(b)(1)
for lack of subject-matter jurisdiction. *See* ECF No. 37 at 11-12. The premise of the
City's argument is that default on the Restoration Contract "triggered the assignment
of all of IKLO's claims to surety Plaintiffs under the plain language of the Indemnity
Agreement." *Id.* at 12. IKLO thus counters that the City is conflating standing with
capacity, and that "capacity is not a matter of constitutional standing that implicates
subject-matter jurisdiction." ECF No. 44 at 5 (citing *Pike*, 610 S.W.3d at 775). The
Court agrees that the City's Rule 12(b)(1) arguments are misplaced. *See McLane
Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 913 (Tex.
2023) (reasoning that contractual assignments implicate "capacity to sue" under that
contract, or a party's "'legal authority to act' despite the assignment").

Although IKLO is correct that assignment under the Indemnity Agreement
does not present a Rule 12(b)(1) issue for lack of subject-matter jurisdiction, that

does not end the Court's inquiry. Indeed, the City prefaced its arguments by noting that the Texas Supreme Court has held that "assignment of contractual rights in a non-surety agreement implicates capacity to sue rather than standing." ECF No. 37 at 11 (citing *McLane Champions*, 671 S.W.3d at 912-13). The City thus argues in the alternative that, if assignment is viewed as "an issue of a lack of capacity to sue, rather than a jurisdictional issue, the Court should dismiss IKLO's claims pursuant to Rule 12(b)(6), because IKLO has not stated a legally cognizable claim against the City." *Id.* at 15. Therefore, IKLO is incorrect that the assignment issue is "beyond the scope of the City's 12(b) Motions." ECF No. 44 at 5.

Accordingly, the Court construes the motion as seeking dismissal for failure to state a claim under Rule 12(b)(6), *see Coates v. Brazoria Cty.*, 894 F. Supp. 2d 966, 968 (S.D. Tex. 2012) ("Whether a party has the capacity to sue or be sued is a legal question that may be decided at the Rule 12 stage."), and considers only the Indemnity Agreement and the Restoration Contract as evidence, as noted above.

### B.  *IKLO Assigned All Claims to Plaintiffs and Cannot Assert Breach-of-Contract Claims Against the City on the Restoration Contract.*

The City's arguments are premised on the Indemnity Agreement between IKLO and Plaintiffs, which purports to "[a]ssign to Surety [Plaintiffs] . . . all rights of the Indemnitors in all contracts," and "all claims, causes of action, actions or demands" against any "owner . . . or others, whether raising out of contracts . . . or not." ECF No. 1-1 at 3; ECF No. 37 at 9, 12. The City contends that courts faced

with similar assignment clauses have routinely "found that the assignment of the terminated contractor's claims against the bond obligee/owner to the surety meant the terminated contractor lacked standing to bring those claims." ECF No. 37 at 14. The City relies on three cases in particular: *Primestar Construction, Inc. v. City of Dallas*, No. 05-17-01447-CV, 2019 WL 1033978 (Tex. App.—Dallas Mar. 5, 2019, pet. denied); *Harlandale Independent School District v. C2M Construction, Inc.*, No. 04-07-00304-CV, 2007 WL 2253510 (Tex. App.—San Antonio Aug. 8, 2007, no pet.); and *NGM Insurance Co. v. Benchmark Utility Contractors, Inc.*, No. SA-19-CA-221-FB (HJB), 2020 WL 7973918 (W.D. Tex. Feb. 6, 2020). The City then compares the assignment provisions here with the provisions enforced in those cases. ECF No. 37 at 12-13. The City asserts that the assignment provisions under the Indemnity Agreement are "substantially similar to the indemnity agreements in *Primestar*, *Harlandale*, and *NGM*." *Id.* at 13-14.

Although those cases discuss contractual assignment in terms of "standing" as opposed to "capacity," that distinction is largely immaterial here.[7] Because lack

---

[7] Recognizing this frequent conflation of terms, courts have noted that the primary "distinction between standing and capacity is . . . objections to capacity may be waived if not timely asserted, but objections to standing are jurisdictional in nature and can be raised at any time." *Linsan, Inc. v. Mercantile Thrift Stores, Inc.*, No. 4:20-CV-04343, 2023 WL 3698551, at *1 (S.D. Tex. Mar. 2, 2023) (cleaned up). IKLO does not argue that the City's capacity arguments raised in its motion to dismiss are "not timely asserted." No answer to the third-party complaint has been filed yet, so the City has not waived this issue. *See* FED. R. CIV. P. 9(a)(2) (requiring capacity defenses to be raised by "specific denial" in pleading); *Ralston Oil & Gas Co. v. Gensco*, Inc., 706 F.2d 685, 692 (5th Cir. 1983) ("The failure to plead lack of capacity waives the right to object.").

14

of capacity *or* standing would independently require dismissal, *see Maxim*, 11 F.4th at 351; *Pike*, 610 S.W.3d at 775, absence of either is fatal. Indeed, facing similar circumstances, the *NGM* court found that assignment of all claims as collateral to an indemnity agreement required dismissal of the defendants' third-party complaint. 2020 WL 7973918, at *3-4. Texas courts have also dismissed petitions where the plaintiffs already assigned those claims pursuant to surety or indemnity agreements. *See Primestar*, 2019 WL 1033978, at *2-5; *Harlandale*, 2007 WL 2253510, at *2-3. The Court further agrees that the indemnity provisions in those cases are substantially similar to the language used here.[8] Thus, unless IKLO can persuade the Court otherwise, dismissal for failure to state a claim due to lack of capacity is appropriate.

However, IKLO fails to rebut the City's assignment arguments. Although IKLO attempts to distinguish between standing and capacity, ECF No. 44 at 4-5, IKLO never actually establishes that it *has* either. Aside from the conclusory subsection title, "IKLO Has Standing And Capacity To Sue The City," *id.* at 4, IKLO fails to explain how it satisfies any of the three elements of standing, and IKLO never

---

[8] For example, the assignment provision in *Harlandale* assigned as collateral to the surety: "All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds." 2007 WL 2253510, at *2 n.2. The broad assignment provisions in the other two cases are equally similar. *See NGM*, 2020 WL 7973918, at *3 (W.D. Tex. Feb. 6, 2020) (assigning as collateral "[a]ll the rights[,] title and interest" in any "actions, causes of action, claims or demands arising out of or in connection with any CONTRACT"); *Primestar*, 2019 WL 1033978, at *2 n.1 (assigning "all of their rights, title and interests in Property," which was defined to include "any Contract").

explains how it has capacity to sue in this situation.[9] As the City notes in its reply, IKLO never cites or attempts to distinguish the three cases on which the City relies. ECF No. 46. Nor does IKLO argue that its breach-of-contract claim against the City somehow avoids the assignment clause. IKLO's failure to respond is construed as abandonment of the issue and a failure to persuade the Court that the provisions in those cases are not similar to the ones at issue. *See Owen v. Harris Cty.*, No. 4:07-CV-03273, 2009 WL 10694750, at *3 (S.D. Tex. Mar. 31, 2009) ("A plaintiff's failure to pursue a claim beyond a complaint constitutes abandonment." (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006))). Accordingly, IKLO has assigned all potential claims to Plaintiffs through the Indemnity Agreement, so IKLO lacks capacity to sue under the Restoration Contract.

### C.    *IKLO's Counterarguments are Inadequately Briefed and Waived.*

In its response, IKLO raises only two counterarguments: ambiguity and acquiescence. However, IKLO fails to adequately brief either argument. "Courts have consistently held that inadequate briefing results in a waiver of a party's argument." *Hall v. Mut. of Omaha Ins. Co.*, No. 4:16-CV-160-DMB-JMV, 2018 WL 1440075, at *18 (N.D. Miss. Mar. 22, 2018) (quotation omitted); *cf.* Local Rule 7.4

---

[9] Indeed, standing and capacity are not unrelated, as the assignment of a contract claim effectively precludes redressability. *See, e.g.*, *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 448, 452 (5th Cir. 2022) (concluding redressability element not satisfied where plaintiff assigned insurance benefits to pharmacy, which allegedly overbilled plaintiff's insurer).

("Failure to respond to a motion will be taken as a representation of no opposition."). Arguments may be waived where the party "fail[s] to adequately brief its arguments, and support them with facts, evidence, or applicable authority." *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019).

> At the very least, this means clearly identifying a theory as a proposed basis for deciding the case—merely intimating an argument is not the same as "pressing" it. In addition, among other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit cases.

*Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 Fed. App'x 146, 151 (5th Cir. 2015) (cleaned up). This is equally true at the motion-to-dismiss stage, and "if a plaintiff fails to respond to an argument raised in a motion to dismiss, it is deemed to be abandoned." *Reese v. Wells Fargo US Holdings, Inc.*, No. 19-CV-799-S-BK, 2020 WL 874807, at *1 (N.D. Tex. Jan. 30, 2020), *adopted*, No. 3:19-CV-0799-S-BK, 2020 WL 870227 (N.D. Tex. Feb. 20, 2020) (citing *Black*, 461 F.3d at 588 n.1).

In its first argument, IKLO asserts that the Indemnity Agreement is ambiguous. ECF No. 44 at 6.[10] However, the only legal authority IKLO cites is for the basic premise that "a contract is ambiguous when its meaning is uncertain and

---

[10] However, IKLO does not raise ambiguity as an affirmative defense to Plaintiffs' claims under the same Indemnity Agreement. *See* ECF No. 13; *cf. Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp. 2d 814, 847 (N.D. Tex. 2010) ("Under Texas law, however, ambiguity is an affirmative defense that must be pleaded.").

doubtful or when it is susceptible to more than one meaning." *Id.* (citing *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484 (Tex. App.—San Antonio 2000, pet. denied)).[11] Quite to the contrary, the "terms of the indemnity agreement at issue here are standard throughout the industry and have been widely upheld by courts." *Harlandale*, 2007 WL 2253510, at *2 (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 281 (Tex. 1998); PHILIP L. BRUNER & TRACEY L. HALEY, MANAGING AND LITIGATING THE COMPLEX SURETY CASE (2d ed. 2007) (discussing standard clauses)).

In an effort to show ambiguity, IKLO contends that inclusion of the terms "government" and "government agency" in one provision and omission of those terms in another provision of the Indemnity Agreement renders it "doubtful and uncertain whether IKLO's claims against the City were ever intended to be included in the alleged assignment." ECF No. 44 at 6. But this half-page argument fails to establish any possible ambiguity. Indeed, the Court sees no ambiguity where the Indemnity Agreement purports to assign "all rights of the Indemnitors in all

---

[11] IKLO provides no pinpoint citations or legal analysis, nor does it attempt to provide a reasonable alternative interpretation. IKLO's summary also omits relevant limiting language from the cited case:

> If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law. A contract is ambiguous *only* when its meaning is uncertain and doubtful or it is *reasonably* susceptible to more than one meaning.

*Taylor-Made Hose*, 21 S.W.3d at 488 (cleaned up) (emphasis added).

*contracts*," as well as "all claims . . . Indemnitors may have against any subcontractor

. . . owner . . . or *others*, whether arising out of contracts secured by Bond(s) executed

by Surety or not." ECF No. 1-1 at 3 (emphasis added). IKLO offers no explanation

how its breach-of-contract claim against the City escapes this broad assignment.[12]

Even if IKLO had adequately briefed its arguments, the Indemnity Agreement is

unambiguous. *See Harlandale*, 2007 WL 2253510, at \*2.

IKLO's second argument is that Plaintiffs are aware of the claims that IKLO

has asserted against the City and have not objected, and therefore have waived any

rights they have. ECF No. 44 at 6. IKLO cites no authority in support. The only

evidence offered in support of this argument is a general citation to the entire

Indemnity Agreement. ECF No. 44 at 6 (citing ECF No. 1-1). However, IKLO fails

to distinguish language in the Indemnity Agreement providing that "Surety's

exercise of any of its rights as a secured creditor under this Agreement shall not be

a waiver of any of Surety's legal or equitable rights or remedies, including the

Surety's rights of subrogation." ECF No. 1-1 at 4. Once again, even if IKLO's

arguments were not waived for inadequate briefing, they are without merit. Thus,

the Court finds that IKLO lacks capacity to bring its breach-of-contract claim.

---

[12] The omission of "government" or "governmental agencies" from the provision assigning *non*-contract claims is explainable by the fact that local governments are generally immune from claims outside of limited statutory waivers, such as for breach of contract. *See* TEX. LOC. GOV'T CODE § 271.152.

### D.    IKLO's Duty to Cooperate Claim Fails.

IKLO also asserts a cause of action for breach of the duty to cooperate. ECF No. 35 ¶ 25. IKLO never identifies the source of this alleged duty. The City thus seeks dismissal of this claim as falling outside the limited statutory waiver of sovereign immunity for contracts. ECF No. 37 at 20 (citing Tex. Loc. Gov't Code §§ 271.151, 271.152). In response, IKLO only briefly mentions this cause of action in passing. ECF No. 44 at 12. IKLO cites no authority in support of this claim and fails to explain why it should not be dismissed. Even assuming such a cause of action existed, IKLO's failure to respond and defend results in waiver of that claim. *See Owen*, 2009 WL 10694750, at *3 ("A plaintiff's failure to pursue a claim beyond a complaint constitutes abandonment." (citing *Black*, 461 F.3d at 588 n.1)).

### E.    IKLO's Third-Party Complaint Should Be Dismissed with Prejudice.

IKLO does not request further leave to amend in its response. The unpersuasive arguments it raises in opposition convince the Court that IKLO has pleaded its "best case" and no further amendment is possible. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 Fed. App'x 625, 627 (5th Cir. 2017); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Having raised no viable claims in its third-party complaint, dismissal with prejudice is an appropriate

result.[13]

## V.     CONCLUSION

Accordingly, the Court **RECOMMENDS** that the City's motion to dismiss, ECF No. 37, be **GRANTED**, and IKLO's first amended third-party complaint, ECF No. 35, be **DISMISSED WITH PREJUDICE**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on May 31, 2024, at Houston, Texas.

*Dena Palermo*
_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[13] The City also argues that IKLO cannot show the City Engineer committed fraud, mistake, or misconduct; therefore, sovereign immunity bars these claims. ECF No. 37 at 15-20. Other than the Texas statutory waiver of immunity, TEX. LOC. GOV'T CODE § 271.152, IKLO fails to identify any other express waiver in the contract or elsewhere, *see* ECF No. 44 at 7 n.6. Instead, IKLO repurposes its contract ambiguity arguments. *See id.* at 8-10. These arguments are unsupported by authority and are inadequately briefed. IKLO identifies no cases where a court has found an *implied* waiver of immunity. *Contra City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) (noting home-rule cities' immunity from suit is derived from the Texas Constitution and can only be limited "when a statute speaks with 'unmistakable clarity'" (quotation omitted)). IKLO does not dispute the source of the City's immunity. ECF No. 37 at 3 n.1 (citing TEX. CONST. art. XI, § 5; TEX. LOC. GOV'T CODE § 9.008(b)). However, because the Court finds that IKLO lacks capacity to sue and the third-party complaint should be dismissed, it need not consider the City's remaining arguments, which are dependent upon the excluded evidence. *See* ECF No. 46 at 6-10 (relying on excluded exhibits to dispute factual allegations in third-party complaint).